MATTER OF YUEN

In Visa Petition Proceedings

A-19458534

*Decided by Board March 13, 1972*

Beneficiary, who was born in China in 1950, allegedly adopted there in 1956, in absentia, when the adoptive parents were both permanent residents of this country, and who did not become a member of their household until he visited the United States in 1968 at age 18, is denied preference classification under section 203(a)(1), Immigration and Nationality Act, as amended, as an unmarried son, since (1) a true parental relationship was not created before age 14 so as to constitute an adoption within the meaning of section 101(b)(1)(E) of the Act; (2) there is no showing that the State of New York, of which the adoptive parents were residents at the time of the claimed adoption, recognizes the validity of the adoption; and (3) there is doubt as to the *bona fides* of the adoption since beneficiary is the blood nephew of the petitioner, a written agreement of the adoption was never produced, and the only supporting evidence is the uncorroborated affidavit of the petitoner.

ON BEHALF OF PETITIONER:    Elmer Fried, Esquire
                            515 Madison Avenue
                            New York, New York 10022

The United States citizen petitioner applied for immediate relative status for the beneficiary as his adopted child under section 201(b) of the Immigration and Nationality Act. The District Director denied the application in an order dated May 14, 1971, and the petitioner appeals from that order. The appeal will be dismissed.

The beneficiary is an unmarried male who was born in the Peoples Republic of China on March 9, 1950. The petitioner claims that he is his adopted son. The petitioner's affidavit recites the following facts: (1) he was born in China in 1899; (2) he lived in the United States since 1915; (3) he visited China in 1933 and got married there; (4) he then returned to the United States; (5) his wife remained in China until 1950, when she fled to Hong Kong; (6) in 1956 the wife entered the United States as an alien lawfully admitted for permanent residence; (7) an adoption of the beneficiary purportedly occurred in the Peoples Republic of China on September 12, 1956; (8) an adoption agreement was allegedly

executed but no copy of it is available; (9) at some undisclosed time after 1956 the beneficiary was taken to Hong Kong where he resided with his sister and the petitioner's mother-in-law (possibly the beneficiary's grandmother) until 1968; (10) on October 5, 1968 the beneficiary came to the United States for a visit and has resided with the petitioner and his wife ever since; and (11) on January 13, 1971, before the beneficiary attained the age of 21 years, the present petition was filed.

The petition was evidently filed to accord the beneficiary immediate relative status as a "child" under section 201(b) of the Act. Section 101(b)(1) defines a "child" to mean an unmarried person under the age of 21 years. On May 14, 1971, the date of the District Director's decision, the beneficiary was over 21 years of age. Immediate relative status under section 201(b) was no longer available to the beneficiary once he passed his twenty-first birthday, since he no longer was the "child" of a United States citizen.

The District Director apparently treated the petition as one to accord the beneficiary preference status as an unmarried son under section 203(a)(1) of the Act. We agree with the District Director that this was the correct way to consider the present petition.

There is no definition of "son" in the Immigration and Nationality Act, but "child" is defined in section 101(b)(1)(E) to include a child adopted while under the age of 14 years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years. This Board has held in a prior precedent decision that aliens adopted by United States citizens are not eligible for preference status as a "son" or "daughter" unless they were adopted in conformity with section 101(b)(1)(E), *Matter of P—*, 8 I. & N. Dec. 527 (BIA, 1960). See also *Matter of Caramanzana*, 12 I. & N. Dec. 47 (BIA, 1967). Hence, the benefit of section 203(a)(1) is not available to the beneficiary unless prior to his twenty-first birthday he would have come within the definition of adopted child set forth in section 101(b)(1)(E).

The definition of "child" contained in section 101(b)(1) did not extend to an adopted child until section 101(b)(1)(E) was added by the Act of September 11, 1957 (71 Stat. 639). The amendment was designed to prevent hardship and to keep families together. At the same time Congress desired to prevent the recognition of *ad hoc* adoptions made only for the purpose of circumventing the immigration laws. In conformity with the intent of Congress, we have held that an adoptive relationship relied upon to support the granting of a petition for visa preference must rest upon a valid subsisting adoption, *Matter of Chan*, 12 I. & N. Dec. 513 (BIA, 1967). In another decision, unfortunately unpublished, we sustained the

denial of a preference petition where the beneficiary had not come under the parental control of the petitioner but had continued to reside in the home of her natural parents, *Matter of Chapralis*, A-14922517 (unreported, BIA, October 24, 1967). In that case we found that the existence of an adoption in the ordinary legal sense of the term had not been established. We take note of the fact that Bouvier's Law Dictionary, 3rd edition, defines adoption as: "The act by which a person takes the child of another into his family, and treats him as his own."

In the preent case the beneficiary left his birthplace in China sometime after the alleged adoption occurred and went to Hong Kong, where he resided with his sister and another woman, the petitioner's mother-in-law. He remained in Hong Kong until 1968, when he came to the United State as a visitor. Since that time he has been living with the petitioner and the petitioner's wife. At no time between the date of the purported adoption and his fourteenth birthday did the beneficiary spend any time in the same country as the petitioner or his wife. He was eighteen years of age when he finally reached them in 1968. It cannot be said that, prior to the time he attained the age of fourteen years, the beneficiary actually entered the family or household of the petitioner. On the basis of these facts we are unable to find that a true parental relationship was created before the age of 14 years. Therefore, we cannot find that an adoption occurred within the comtemplation of section 101(b)(1)(E) of the Act.

In the present case the beneficiary was purportedly adopted in the Peoples Republic of China at a time when the petitioner and his wife were both permanent residents of the United States. The petitioner claims that there was an adoption by his wife, *in absentia*, with his approval. In an earlier decision, involving the adoption of a child residing in Portugal by a United States citizen residing in New Jersey, which adoption was effected in the Portuguese consulate in New York City, we refused to recognize the adoption for immigration purposes in the absence of any showing that the adoption would be recognized as valid by either the State of New York or the State of New Jersey, *Matter of B—*, 5 I. & N. Dec. 733 (BIA, 1954). We realize that in the present case the question as to the extraterritorial effect to be given a foreign adoption law has not been raised. Nevertheless, we believe that the principle set forth in *Matter of B—*, *supra*, applies to the present case as well. The facts in the present case present an even weaker case in favor of the validity of the adoption than in *Matter of B—*, *supra*. Accordingly, since the petitioner and his wife were apparently residents of New York State at the time of the claimed adoption, we cannot accept the adoption as valid for immigration

purposes because there is no showing that the State of New York recognizes the validity of the adoption.

Furthermore, the fact that the beneficiary is the blood nephew of the petitioner, coupled with the fact that a written agreement of adoption was never produced raises doubt as to the bona fides of the adoption. We also note that the file contains no evidence in support of the adoption other than the uncorroborated affidavit of the petitioner. The petitioner has failed to explain away the doubt present in this case and the file contains insufficient evidence to prove the existence of any adoption.

The District Director denied the petition for a different reason, namely, on the ground that "customary adoption cannot have occurred in Mainland China since May 1, 1950 as all previous laws were abrogated and no provisions for adoption have since been created by the Government in power." We need not delve into this question since we dispose of this appeal on the other grounds set forth above.

Although for different reasons than the one given by the District Director, we hold that the District Director was correct in finding that the petitioner has not borne the burden of establishing that the beneficiary is an adopted child under section 201(b) or an unmarried adopted son for purposes of section 203(a)(1). Therefore, the beneficiary is not eligible for either immediate relative or preference status under those sections of the Act. The appeal accordingly will be dismissed and the following order will be entered.

**ORDER:** The appeal is dismissed.